**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| H-D U.S.A., LLC, | |
| Plaintiff, | Case No. 19-cv-03935 |
| | **Judge Robert M. Dow, Jr.** |
| v. | **Magistrate Judge Jeffrey Cummings** |
| AIYIER STORE, et al., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF**
**DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED**
**ON SCHEDULE A, WITH THE EXCEPTION OF DEFENDANT EMMA2013DW**

Plaintiff H-D U.S.A., LLC ("Harley-Davidson") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the defendants identified on Schedule A to the Amended Complaint, with the exception of Defendant abbottjk_2, (collectively, the "Defaulting Defendants") based on Harley-Davidson's action for trademark infringement, counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

**STATEMENT OF FACTS**

Harley-Davidson is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel, jewelry, leather goods, and assorted accessories. [11] at ¶ 5. Harley-Davidson holds registrations for its trademarks with the U.S. Patent and Trademark Office (the "HARLEY-DAVIDSON Trademarks"). *Id*. at ¶ 12. Additional factual assertions regarding Harley-Davidson in Paragraphs 4 – 23 of the Amended Complaint are incorporated herein. *Id*. at ¶¶ 4 – 23.

Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified on Schedule A (collectively, the "Defendant Internet Stores"). *Id*. at ¶ 24. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell unauthorized and unlicensed counterfeit products using counterfeit versions of Harley-Davidson's federally registered trademarks (collectively, the "Counterfeit Harley-Davidson Products") to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions regarding Defaulting Defendants in Paragraphs 24 – 34 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 24 – 34.

Harley-Davidson filed this action on June 12, 2019 [1] and soon thereafter filed an Amended Complaint [11]. On June 18, 2019, this Court granted Harley-Davidson's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [25], subsequently extended the TRO [31], and converted the TRO [25] to a Preliminary Injunction [38]. Paragraph 6 of the TRO permitted Harley-Davidson to complete service of process to Defendants by electronically publishing a link to the Amended Complaint, the TRO and other relevant documents on a website and sending an e-mail to the e-mail addresses identified in Exhibit 3 to the Declaration of Adraea M. Brown and any e-mail addresses provided for Defendants by third parties that includes a link to said website. [25] at ¶ 6. The Defendants were properly served on July 11, 2019. [36]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

2

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Harley-Davidson now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Harley-Davidson's Amended Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Harley-Davidson further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeits of the HARLEY-DAVIDSON Trademarks on products sold through each of the Defendant Internet Stores. Harley-Davidson also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Harley-Davidson Products and an order that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Inc. ("PayPal"), Alipay, Wish.com, and Amazon, as well as any newly discovered assets, be transferred to Harley-Davidson.

## ARGUMENT

### I.  JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Harley-Davidson's business within this Judicial District. *See* [11] at ¶¶ 2, 24, 33 and 34; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an

evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, commercial Internet stores operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and, on information and belief, has sold Counterfeit Harley-Davidson Products to residents of Illinois. [11] at ¶ 2. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Harley-Davidson Products. [11] at ¶ 2. *See Monster Energy Co. v. Chen Wensheng, et al.*, 2015 U.S. Dist. LEXIS 132283, at *11 (N.D. Ill. Sept. 29, 2015).

## II.     HARLEY-DAVIDSON HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On June 13, 2019, Harley-Davidson filed its Amended Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), false designation of origin, 15 U.S.C. § 1125(a) (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. (Count III). [11]. The Defendants were properly served with the Amended Complaint on July 11, 2019. [36]. Despite having been served with process, none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio

4

Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Harley-Davidson asks for entry of default against the Defaulting Defendants.

## III. HARLEY-DAVIDSON HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Harley-Davidson served Defendants on July 11, 2019. [36]. More than twenty-one (21) days have passed since the Defaulting Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Harley-Davidson requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeits of the HARLEY-DAVIDSON Trademarks on products sold through the Defendant Internet Stores. Harley-Davidson also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Harley-Davidson Products and an order that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Alipay, Wish.com, and Amazon, and any newly identified accounts be transferred to Harley-Davidson.

A.   **Trademark Infringement and Counterfeiting, False Designation of Origin, and Violation of the Illinois Uniform Deceptive Trade Practices Act**

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products.   *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001).  This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act.  *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Harley-Davidson alleged in its Amended Complaint that it is the exclusive owner of the federally registered HARLEY-DAVIDSON Trademarks, and that Defaulting Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the HARLEY-DAVIDSON Trademarks, that Defaulting Defendants have knowledge of Harley-Davidson's rights in the HARLEY-DAVIDSON Trademarks, that Defaulting Defendants are not authorized to use the HARLEY-DAVIDSON Trademarks, and that Defaulting Defendants' use of the HARLEY-DAVIDSON Trademarks causes a likelihood of confusion.  [11] at ¶¶ 36-38.

Harley-Davidson also alleged in its Amended Complaint that Defaulting Defendants are using the federally registered HARLEY-DAVIDSON Trademarks on the Counterfeit Harley-Davidson Products.  [11] at ¶ 33.  As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Harley-

6

Davidson or the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit Harley-Davidson Products by Harley-Davidson. *Id*. at ¶ 43.

Harley-Davidson further alleged in its Amended Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Harley-Davidson Products as those of Harley-Davidson; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Harley-Davidson Products; representing that their Counterfeit Harley-Davidson Products have Harley-Davidson's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [11] at ¶ 48.

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Harley-Davidson requests entry of judgment with respect to Counts I, II, and III for willful trademark infringement and counterfeiting of the HARLEY-DAVIDSON Trademarks, willful false designation of origin, and willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendants.

IV.     **PLAINTIFF IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF**

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

Harley-Davidson expends millions of dollars advertising and promoting the HARLEY-DAVIDSON Trademarks. [15] at ¶ 20. The success of the Harley-Davidson brand has resulted in its significant counterfeiting, so Harley-Davidson has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* at ¶ 22.

## A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *9 (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. Apr. 17, 2008).

## B. Defaulting Defendants' Counterfeiting Was Willful

As alleged in Harley-Davidson's Amended Complaint, Defaulting Defendants facilitated sales by designing the Defendant Internet Stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. [11] at ¶ 27. In doing so, it is

clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563, at *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Harley-Davidson's rights in its HARLEY-DAVIDSON Trademarks. [11] at ¶¶ 29-31; *see also* [16].

Finally, District Courts have deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

### C. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, at *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d

1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, at *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, at *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45) (awarding $2,000,000 in statutory damages per

defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Harley-Davidson respectfully requests the Court's entry of an award of five hundred thousand dollars ($500,000) per Defaulting Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Harley-Davidson] brand and the efforts taken to protect, promote and enhance [that brand]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Harley-Davidson spends millions of dollars promoting and marketing the Harley-Davidson brand. [15] at ¶ 20. Thus, Harley-Davidson's request for a high statutory damages award should be given favorable consideration in view of the value of the Harley-Davidson brand and the extensive steps being taken by Harley-Davidson to protect, promote and enhance it.

### D. Harley-Davidson Is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Harley-Davidson respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Harley-Davidson's rights in the federally registered HARLEY-DAVIDSON Trademarks, including at least all injunctive relief previously awarded by this Court to Harley-Davidson in the TRO and Preliminary Injunction. Harley-Davidson is also entitled to injunctive relief so it can quickly take action against any new online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit Harley-Davidson Products. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## CONCLUSION

Harley-Davidson respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of five hundred thousand dollars ($500,000) per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit Harley-Davidson Products and transferring all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Alipay, Wish.com, and Amazon, to Harley-Davidson.

12

Dated this 12th day of August 2019.    Respectfully submitted,

                                   /s/ Justin R. Gaudio
                                   Amy C. Ziegler
                                   Justin R. Gaudio
                                   RiKaleigh C. Johnson
                                   Greer, Burns & Crain, Ltd.
                                   300 South Wacker Drive, Suite 2500
                                   Chicago, Illinois 60606
                                   312.360.0080 / 312.360.9315 (facsimile)
                                   aziegler@gbc.law
                                   jgaudio@gbc.law
                                   rjohnson@gbc.law

                                   *Counsel for Plaintiff H-D U.S.A., LLC*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of August 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website and I will send an e-mail to the e-mail addresses identified in Exhibit 3 to the Declaration of Adraea M. Brown and any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiff H-D U.S.A., LLC*